

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TEAMSTERS UNION LOCAL NO. 35 PENSION FUND, | CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933 |
| Plaintiff, | |
| vs. | JURY TRIAL DEMANDED |
| BERNARD W. DAN, ALISON J. CARNWATH, J. RANDY MACDONALD, HENRI J. STEENKAMP, EILEEN S. FUSCO, MARTIN GLYNN, EDWARD L. GOLDBERG, DAVID I. SCHAMIS, LAWRENCE M. SCHLOSS, and ROBERT S. SLOAN, | |
| Defendants. | |

12 CV 1782

Plaintiff, Teamsters Union Local No. 35 Pension Fund ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of MF Global Holdings Ltd.'s ("MF Global" or the "Company") press releases, Securities and Exchange Commission ("SEC") filings, analyst reports, media reports, and other publicly disclosed reports and information about the defendants.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a securities class action on behalf of Plaintiff and all other persons or entities who purchased or otherwise acquired the common stock of MF Global between December 1, 2009 and December 1, 2010 pursuant to and/or traceable to the Company's registration statement that became effective on December 1, 2009 (the "Registration Statement"), seeking to pursue *strict liability and negligence* claims under the Securities Act of 1933 (the "Securities Act").

## INTRODUCTION AND BACKGROUND TO THE ACTION

2.      MF Global was one of the world's leading global financial derivatives broker.  It provided execution and clearing services for products in the exchange-traded and over-the-counter derivative markets.  The Company's history traced back over 200 years to a brokerage business that was a founding member of some of the world's first futures exchanges.  In July 2007, the Company undertook an initial public offering to separate from its parent company, Man Group plc, and became an independent public company with shares listed on the New York Stock Exchange.  As of March 31, 2009, the Company had more than 137,000 active clients worldwide.  It filed for Chapter 11

bankruptcy on October 31, 2011 after suffering a highly publicized shortfall of hundreds of millions of dollars in what should have been segregated customer accounts.

3.      In December of 2009, MF Global registered its common stock with the SEC as part of a domestication transaction whereby it transitioned from a Bermuda-based company into a company based in the United States.   As part of this domestication, MF Global filed the Registration Statement with the SEC.   Several materials were incorporated by reference into the Registration Statement, including other documents filed with the SEC, such as its Annual Report on Form 10-K, Quarterly Reports on Form 10-Q, and Reports on Form 8-K, among other documents.   After being registered in the U.S. pursuant to the Registration Statement, MF Global's stock traded in the U.S.

4.      In the Registration Statement and the documents incorporated by reference, MF Global misleadingly touted its supposedly well-developed internal controls and procedures and the ability of those internal controls to maintain the financial stability and success of the Company. However, contrary to those representations, MF Global actually suffered from a severe lack of internal controls and supervision.   This lack of internal controls and supervision plagued MF Global and made the Company unable to prevent various forms of nefarious and risky activities, including activities that ultimately caused the Company's demise.

5.      Among other things, the lack of internal controls and supervision at MF Global led to the Company being used as a conduit for illegal activities, such as Ponzi schemes and other fraudulent investment schemes where investors lost tens of millions of dollars.

6.      The lack of internal controls and supervision meant that MF Global did not have the ability to prevent rogue traders and brokers from using the MF Global apparatus to further criminal and fraudulent activity at the expense of MF Global investors, and from risking huge amounts of MF Global assets, as well as the assets of MF Global clients, in an unregulated manner.

7.     Evidencing its lack of internal controls, MF Global was sanctioned by government regulators more heavily than each of its 14 closest peers over the past decade.  It also drew the second-highest amount in fines from government regulators specifically for lapses in risk supervision and recordkeeping.  The Federal Reserve likewise expressed misgivings about MF Global's lack of internal controls in 2009.

8.     After numerous government sanctions and reports of fraudulent activity taking place within MF Global, the weaknesses of the Company's internal controls finally caught up to it. Ratings agencies Fitch Ratings and Moody's Investors Service downgraded MF Global's credit rating to junk status.  The Company filed for Chapter 11 bankruptcy protection and admitted that it could not account for hundreds of millions of dollars in customer accounts.  Investors that held MF Global common stock saw the price of the stock decline from the $4.00 range in early October 2011 to mere pennies by the end of the year as the stock traded in the pink sheets.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over the causes of action asserted herein because they arise under federal securities laws.  The claims alleged herein arise under §§11, 12(a)(2), and 15 of the Securities Act.  *See* 15 U.S.C. §§77k, 77l(a)(2), and 77o.  Jurisdiction is conferred by §22 of the Securities Act and venue is proper pursuant to §22 of the Securities Act.

10.     This Court has personal jurisdiction over each of the Defendants named herein because they conducted business in, resided in, and/or were citizens of New York.  Among other things, all of the Defendants signed the Registration Statement.

11.     Venue is proper in this Court because many of the acts complained of, including the dissemination of materially false and misleading statements and reports occurred, at least in part, in this district.

## PARTIES

12.     Plaintiff Teamsters Union Local No. 35 Pension Fund purchased MF Global common stock pursuant and/or traceable to the Registration Statement and was damaged thereby.

13.     Defendant Bernard W. Dan ("Dan") was a Director and the Chief Executive Officer of MF Global.  Defendant Dan signed the false and misleading Registration Statement.

14.     Defendant Alison J. Carnwath ("Carnwath") was the Chairman of the Board of Directors of MF Global.  Defendant Carnwath signed the false and misleading Registration Statement.

15.     Defendant J. Randy MacDonald ("MacDonald") was the Chief Financial Officer of MF Global.  Defendant MacDonald signed the false and misleading Registration Statement.

16.     Defendant Henri J. Steenkamp ("Steenkamp") was the Chief Accounting Officer of MF Global.  Defendant Steenkamp signed the false and misleading Registration Statement.

17.     Defendant Eileen S. Fusco ("Fusco") was a Director of MF Global.  Defendant Fusco signed the false and misleading Registration Statement.

18.     Defendant Martin Glynn ("Glynn") was a Director of MF Global.  Defendant Glynn signed the false and misleading Registration Statement.

19.     Defendant Edward L. Goldberg ("Goldberg") was a Director of MF Global. Defendant Goldberg signed the false and misleading Registration Statement.

20.     Defendant David I. Schamis ("Schamis") was a Director of MF Global.  Defendant Schamis signed the false and misleading Registration Statement.

21.     Defendant Lawrence M. Schloss ("Schloss") was a Director of MF Global. Defendant Schloss signed the false and misleading Registration Statement.

22.   Defendant Robert S. Sloan ("Sloan") was a Director of MF Global.  Defendant Sloan signed the false and misleading Registration Statement.

## SUBSTANTIVE ALLEGATIONS

### Background

23.   As one of the world's leading financial derivatives brokers, it was necessary that MF Global employ sophisticated and effective internal controls and supervisory procedures to prevent the Company from becoming subject to fraudulent and/or excessively risky activity.  The Company acknowledged the need to invest in maintaining a robust control environment in the Registration Statement filed with the SEC.  The internal controls, however, were weak and ineffective.

23.   For example, MF Global's lack of internal controls and supervision led to the Company being used as a conduit for illegal activity.  MF Global became a vehicle used by two Ponzi schemes, one of which was referred to in media reports as a "mini-Madoff."  Nicholas Cosmo opened an account with MF Global in 2008, even though he had already had run-ins with the law.  In the late 1990s, Cosmo was convicted of fraud.  He was barred from the securities business and ordered to undergo treatment for a gambling addiction.  MF Global did not detect the prior conviction and allowed Cosmo to use the Company to further his criminal activities.

24.   In order to keep a $400 million Ponzi scheme from being discovered, Cosmo made thousands of disastrous trades through his MF Global account.  Cosmo lost more than $19 million of his investors' money in futures bets placed through his MF Global account, according to a complaint filed by the trustee of Cosmo's bankrupt operation against MF Global.

25.   MF Global's background checks and system of internal controls and supervision failed to spot the problems associated with Cosmo.  This failure to detect and limit Cosmo's

suspicious trading was part of a corporate pattern of severely deficient controls that failed to detect obvious red flags.

26.     MF Global's experience with Ponzi schemes was not limited to Nicholas Cosmo. Another schemer, Michael Meisner, used MF Global as a trading conduit to defraud his investors out of millions of dollars as well.  Meisner siphoned nearly $3 million into his trading account at MF Global, according to a 2010 lawsuit filed by the bankruptcy trustee of his operation.  Once again, MF Global's system of internal controls and supervision failed to spot obvious problems with the Company.

27.     Furthermore, MF Global hosted the accounts of a hedge fund named Philadelphia Alternative Asset Management Co.  In order to hide the increasing trading losses from its clients, the hedge fund created a hidden account at MF Global, an account inaccessible to its investors.  The hedge fund ultimately lost approximately $133 million in its MF Global accounts, while simultaneously offering upbeat estimates of its profitability.  MF Global's internal supervisory controls and procedures did not detect this activity, keeping with the corporate pattern of being unable to detect red flags at the Company.

28.     Not only did MF Global's lack of internal controls fail to prevent outside activities from using the Company as a conduit for illegal activity, but MF Global's lack of internal controls failed to prevent its own rogue traders and brokers from using the Company as a vehicle for fraudulent activity.  On February 27, 2008, a rogue MF Global trader made more than 100 trades from his home computer in only a few hours.  He placed a bet of nearly $1 billion to buy thousands of wheat futures contracts.  On February 28, 2008, MF Global said it was taking a $141.5 million loss from those trades.  MF Global's risk control procedures could have prevented the trades from

ultimately going through, but those controls had been switched off in order to allow for greater trading speed.

29.     Shortly after the wheat futures fiasco, a Bank of Montreal natural gas futures trader needed to conceal his substantial losses from his supervisors.  The trader worked through MF Global and another broker.  The trader arranged for MF Global and the other broker to send the Bank of Montreal erroneous price estimates, in effect, keeping the Canadian bank in the dark about the true state of its gas-options accounts.

30.     These incidents and others like it led to MF Global being sanctioned by government regulators for failures to supervise the amount of risk that the Company was taking on.  MF Global was sanctioned more heavily than each of its 14 closest peers in the market over the past decade.  It also drew the second-highest amount in fines specifically for lapses in risk supervision and record-keeping.

31.     The above incidents are indicative of a broader pattern of insufficient and ineffective internal controls which led to severe losses for investors like the Plaintiff.

32.     While some aspects of these incidents were disclosed in some of the documents incorporated by reference into the Registration Statement, these documents never disclosed the root of the problem, that MF Global's internal controls and supervisory processes were ineffective and inadequate to prevent these incidents.  For example, as was later disclosed, the Federal Reserve Bank of New York ("New York Fed") expressed concerns over MF Global's internal controls as far back as 2009, more than two years before the brokerage declared bankruptcy in October and an estimated $1.2 billion in customer funds was discovered missing.  The New York Fed's reservations led it to delay by one year MF Global's application to become a so-called "primary dealer" and join a group of 21 banks and investment firms authorized to trade directly with the central bank, according to

written remarks by Thomas Baxter, Jr. the New York Fed's general counsel, "In April 2009, the New York Fed was informed by the CFTC that there were 'several significant control issues' at MF Global…".[1]

## The False and Misleading Registration Statement

33.    Defendants caused MF Global to file the false Registration Statement with the SEC on November 4, 2009 as form S-4.  The Registration Statement stated that it was a registration "under the Securities Act of 1933."  Pursuant to the S-4, Defendants registered 147,888,308 of shares of MF Global Delaware  so that these shares could be exchanged for the outstanding shares of MF Global Bermuda.  Subsequently, the newly registered shares of MF Global Delaware were to trade in the U.S. on the New York Stock Exchange.

34.    The S-4 was amended on November 30, 2009 and became effective on December 1, 2009.  It appears that the entire market of MF Global stock was comprised of stock registered pursuant to the false and misleading Registration Statement.  As the Registration Statement stated:

> In the Domestication, each of our currently outstanding common and preference shares (Series A and B) will automatically convert by operation of law, on a one-for-one basis, into shares of MFG Delaware common or preferred stock (Series A or B), as applicable. Consequently, upon effectiveness of the Domestication, each holder of an MFG Bermuda common or preference share will instead hold a share of MFG Delaware common or preferred stock, as applicable, in each case representing the same proportional equity interest in MFG Delaware as that shareholder held in MFG Bermuda and representing the same class and series of shares. The number of shares of MFG Delaware common and preferred stock outstanding immediately after the Domestication will be the same as the number of common and preference shares of MFG Bermuda outstanding immediately prior to the Domestication.

The S-4 further stated that "Upon effectiveness of the Domestication, the outstanding common and preferred stock of MFG Delaware will have been registered under the Securities Act of

_____

[1] "CFTC" refers to the U.S. Commodity Futures Trading Commission.

1933 (the "Securities Act"), and owners of the stock who are not affiliates of the Company may

freely resell their stock under the Securities Act."

35.     The Registration Statement contained several false and misleading statements and

omissions pertaining to the Company's lack of internal controls.

36.     In the Company's Annual Report on Form 10-K filed June 10, 2009 for the fiscal year

ended March 31, 2009, which was incorporated by reference into the Registration Statement, MF

Global touted as a competitive advantage the internal controls the Company had in place to manage

risk, stating:

> We have been sensitive to managing our risk exposure, and over the past year
> have become even more focused on our enterprise risk management.  Our
> risk management approach dictates that all of our employees take
> responsibility for managing risk.  ***We have been continually refining
> existing processes and procedures globally as we seek to offer best-in-class
> risk management.***  We believe our focus on, and our investment in,
> enterprise risk management has started to and will continue to set us apart
> from our competition and will make us an increasingly attractive
> counterparty to clients.

[Emphasis added.]

37.     The foregoing statement was false and misleading because the Company was ignoring

repeated failures in its control environment, thereby exposing the Company to the risk of new

incidents and the attendant damage to the Company's reputation and finances.  The statement was

also misleading in light of the failure to disclose that the Federal Reserve and the CFTC were

concerned about "significant control issues" at the Company.

38.     In the Company's Quarterly Report on Form 10-Q filed August 7, 2009 for the

quarter ending June 30, 2009, which was incorporated by reference into the Registration Statement,

the Company again touted its system of internal controls:

> To mitigate loss, we have established an independent operational risk
> department designed to ensure application of a globally consistent
> operational risk management framework.  We also are implementing firm-

wide policies, standards and processes for risk identification, assessment, mitigation and reporting in order to create a more transparent and accountable operational risk environment.

Operational risk is inherent in each of our company's businesses, support and control activities; therefore, the primary day-to-day responsibility for managing operational risk rests with these areas. Each area has established processes, systems and controls to manage operational risk and reports on losses, control and performance metrics and issues. These reports are summarized for senior management and governance committees.

39.     This statement was false and misleading for the same reasons described in Paragraph 37. The Company was not implementing processes to create a more accountable operational risk environment. Rather, the Company was ignoring repeated breakdowns in the risk environment and concerns by the Company's regulators.

40.     Further, in violation of Regulation S-K, the Registration Statement did not disclose that the Company was not maintaining an adequate control environment.

### The Truth Is Revealed

41.     MF Global's lack of internal controls was a major cause of MF Global's collapse. MF Global declared bankruptcy on October 31, 2011, following a $6.3 billion bet on European sovereign debt, a forced capital-raising by regulators, a credit rating downgrade and a record quarterly loss led to a cash crunch that forced the Company into insolvency. "Investigators quickly discovered a $1.2bn shortfall in customer funds, which led one of its regulators, CME Group, to declare that MF Global 'appears to have broken a number of rules and obligations' regarding the protection of customer accounts."

### PLAINTIFF'S CLASS ACTION ALLEGATIONS

42.     Plaintiff bring this action as a class action on behalf of a Class, consisting of all those who purchased MF Global securities pursuant to and/or traceable to the Company's Registration Statement and who were damaged thereby (the "Class"). Excluded from the Class are Defendants,

the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns and any entity in which Defendants have or had a controlling interest.

43.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Class.  The proposed Class may be identified from records maintained by MF Global or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

44.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct.

45.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

46.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

      a.   whether the federal securities laws were violated by Defendants' acts as alleged herein:

      b.   whether the Registration Statement contained materially false and misleading statements and omissions; and

      c.   to what extent Plaintiff and members of the Class have sustained damages and the proper measure of damages.

A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.   Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.   There will be no difficulty in the management of this action as a class action.

## FIRST CLAIM

### Violations of Section 11 of the Securities Act
### Against All Defendants

47.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48.     The Claim is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against each of the Defendants.

49.     The Registration Statement was inaccurate and misleading, contained untrue statements of material facts, and omitted facts necessary to make the statements made therein not misleading and omitted to state material facts required to be stated therein.

50.     The Defendants each signed the Registration Statement.  As such the Defendants are strictly liable for the materially inaccurate statements contained in the Registration Statement and the failure of the Registration Statement to be complete and accurate.  Each of the Defendants had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Registration Statement.  They had a duty to ensure that they were true and accurate, that there were no omissions of material facts that would make the Registration Statement misleading and that the document contained all facts required to be stated therein.  In the exercise of reasonable care, the Defendants should have known of the material misstatements and omissions contained in the Registration Statement and should have known of the omissions of material fact

necessary to make the statements made therein not misleading.  As such, the Defendants are liable to Plaintiff and the Class.

51.     By reason of the conduct herein alleged, each Defendant violated Section 11 of the Securities Act.

52.     Plaintiff acquired MF Global securities in reliance on the Registration Statement and without knowledge of the untruths and/or omissions alleged herein.  Plaintiff sustained damages and the price of MF Global's shares declared substantially due to material misstatements in the Registration Statement.

53.     This action was brought within one year after the discovery of the untrue statements and omissions and within three years of the date of the registration.

54.     By virtue of the foregoing, Plaintiff and the other members of the Class are entitled to damages under Section 11 as measured by the provisions of Section 11(e), from the Defendants and each of them, jointly and severally.

## SECOND CLAIM

### Violations of Section 12(a)(2) of the Securities Act
### Against All Defendants

55.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

56.     Defendants were sellers, offerors, and/or solicitors of purchasers of the MF Global securities offered pursuant to the Registration Statement.  Defendants issued, caused to be issued, and signed the Registration Statement.  The Registration Statement was used to induce investors, such as Plaintiff and other members of the Class, to purchase MF Global securities.

57.     As set forth more specifically above, the Registration Statement contained untrue statements of material fact and omitted to state material facts necessary in order to make the statements, in light of circumstances in which they were made, not misleading.

58.     Plaintiff and the other Class members did not know, nor could they have known, of the untruths or omissions contained in the Registration Statement.

59.     The Defendants were obligated to make a reasonable and diligent investigation of the statements contained in the Registration Statement to ensure that such statements were true and that there was no omission of material fact required to be stated in order to make the statements contained therein not misleading.  None of the Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were accurate and complete in all material respects.  Had they done so, these Defendants could have known of the material misstatements and omissions alleged herein.

60.     This claim was brought within one year after discovery of the untrue statements and omissions in the Registration Statement and within three years after MF Global securities were sold to the Class in connection with the Registration Statement.

## THIRD CLAIM

### Violations of Section 15 of the Securities Act
### Against All Defendants

61.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

62.     Defendants acted as controlling persons of MF Global within the meaning of §15 of the Securities Act.  By reason of their ownership, senior management positions and/or directorships at the Company, as alleged above, these Defendants, individually and acting pursuant to a common plan, had the power to influence and exercise the same to cause MF Global to engage in the conduct

complained of herein.  By reason of such conduct, the Defendants are liable pursuant to §15 of the Securities Act.

63.     By reason of such wrongful conduct, the Defendants are liable pursuant to §15 of the Securities Act.  As a direct and proximate result of the wrongful conduct, Class members suffered damages in connection with their purchases of the Company's securities.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.     Declaring this action to be a proper class action pursuant to Rule 23 and certifying Plaintiff as a Class Representative;

B.     Awarding Plaintiff and other members of the Class compensatory damages;

C.     Awarding Plaintiff and other members of the Class rescission on their Section 12(a)(2) claims;

D.     Awarding Plaintiff and other members of the Class pre-judgment and post-judgment interest, as well as reasonable attorneys' fees, expert witness fees, and other costs and disbursements; and

E.     Awarding Plaintiff and other members of the Class any other relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: March 9, 2012

SCOTT+SCOTT LLP

THOMAS L. LAUGHLIN IV

Thomas L. Laughlin IV (TL-8888)
500 Fifth Ave., 40th Floor
New York, NY 10019
Telephone: 212/223-6444
212/223-6334 (fax)
Email: tlaughlin@scott-scott.com

*Counsel for Plaintiff*

- 16 -

## CERTIFICATION PURSUANT TO
## THE FEDERAL SECURITIES LAWS

I, Roger F. Grover, Jr., hereby certify that the following is true and correct to the best of my knowledge, information and belief:

1.      I am a Trustee of the Teamsters Union Local No. 35 Pension Fund ("Teamsters Local 35").

2.      I have reviewed the Complaint in this matter and authorize Scott+Scott LLP to file a complaint and to file lead plaintiff papers in this matter.

3.      Teamsters Local 35 is willing to serve as a representative party on behalf of the purchasers of MF Global Holdings Ltd. securities during the Class Period, including providing testimony at deposition and trial, if necessary.

4.      During the Class Period, Teamsters Local 35 purchased and/or sold the security that is the subject of the Complaint as set forth on the attached Schedule A.

5.      Teamsters Local 35 did not engage in the foregoing transactions at the direction of counsel nor in order to participate in any private action arising under the Securities Act of 1933 (the "Securities Act") or the Securities Exchange Act of 1934 (the "Exchange Act").

6.      During the three-year period preceding the date of my signing this Certification, Teamsters Local 35 has not served or sought to serve as a representative party or lead plaintiff on behalf of a class in a private arising under the Securities Act or the Exchange Act.

7.      Teamsters Local 35 will not accept any payment for serving as a representative party on behalf of the class beyond its *pro rata* share of any recovery, except for such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.   Executed at

<u>Trenton, New Jersey</u>___. (City, State)

TEAMSTERS UNION LOCAL
NO. 35 PENSION FUND

<u>3/2/2012</u>
Date

*Roger F. Grover Jr.*
Roger F. Grover Jr., Trustee

1

## TEAMSTERS UNION LOCAL NO. 35 PENSION FUND

Transactions in MF GLOBAL HOLDINGS LIMITED Between December 1, 2009 and December 1, 2010

| Trade Date | Action (Buy/Sell) | Quantity | Price Per Share |
|---|---|---|---|
| 5/17/2010 | Bought | 1,840 | $9.00 |
| 5/18/2010 | Bought | 1,770 | $8.70 |
| 5/20/2010 | Bought | 1,250 | $8.14 |
| 6/2/2010 | Bought | 1,210 | $7.11 |
| 6/4/2010 | Bought | 1,150 | $7.22 |
| 6/14/2010 | Bought | 680 | $6.92 |
| 7/19/2010 | Bought | 1,730 | $6.10 |
| 7/28/2010 | Bought | 1,710 | $6.44 |
| 8/4/2010 | Bought | 1,120 | $6.67 |
| 9/2/2010 | Bought | 1,590 | $7.11 |
| 9/17/2010 | Bought | 150 | $7.39 |
| 11/19/2010 | Bought | 2,180 | $8.06 |
| 10/25/2011 | Sold | -4,593 | $1.92 |
| 10/25/2011 | Sold | -1,434 | $1.87 |
| 10/26/2011 | Sold | -4,972 | $1.29 |
| 10/26/2011 | Sold | -498 | $1.96 |
| 10/26/2011 | Sold | -4,350 | $1.53 |
| 10/26/2011 | Sold | -533 | $1.26 |